IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUCKY 13 UNLIMITED, LLC<br>D/B/A THE UNION TAP HOUSE | : | No. 2:15-cv-05946-RK |
| Plaintiff/Petitioner, | : | |
| v. | : | |
| COMLY ROAD HOLDINGS, LLC<br>D/B/A UNION TAP<br>D/B/A UNION TAP PHILLY<br>D/B/A UNIONTAPPHILLY.COM | : | |
| Defendant/Respondent. | : | |

**DEFENDANT/RESPONDENT'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

Defendant/Respondent Comly Road Holdings, LLC ("Defendant") submits the following proposed findings of fact and conclusions of law as requested by the Court at the preliminary injunction hearing in this matter on November 20, 2015.

**FINDINGS OF FACT**

1. Defendant is a limited liability company, whose member is Roman Jarema. *See* November 20, 2015 Hearing Transcript ("Transcript") at p. 39:11-21. A true and correct copy of the Transcript is attached hereto as Exhibit A.

2. Mr. Jarema operated a restaurant in Northeast Philadelphia called General Grant's American Bar and Grill, which closed in March 2015. The restaurant was named for the Civil War Union General. *See* Transcript at pp. 40:5-15, 40:20-25, and 48:2-48:7.

3. In or around February 2015, Defendant became interested in opening a new restaurant at Comly Road in Northeast Philadelphia. *See* Transcript at p. 41:1-18.

1

4. Defendant sought to name the restaurant for something related to the Civil War, keeping with the theme that had been used at the prior restaurant, General Grant's American Bar and Grill. *See* Transcript at p. 40:20-25, 48:2-48:7.

5. Defendant also sought to use the word Union in the restaurant's name because the new restaurant on Comly Road was to be located near a number of union halls and its customer base would include union members. *See* Transcript at pp. 42:25-43:25.

6. Defendant sought to use the word Tap in the restaurant's name because it liked the name of the restaurant, Standard Tap. *See* Transcript at p. 40:20-25.

7. Defendant thus decided to use the name The Union Tap for its restaurant on Comly Road. *See* Transcript at pp. 40:20-42:20.

8. Upon deciding to use the name The Union Tap for its restaurant, Defendant performed internet searches to determine whether The Union Tap was being used as the name of a restaurant anywhere in Philadelphia. *See* Transcript at pp. 40:20-42:20, 48:16-49:17.

9. Pursuant to its searches, Defendant found numerous restaurants using the word Union in their name but Defendant did not find any restaurant in Philadelphia or anywhere in the Commonwealth of Pennsylvania called The Union Tap, Union Tap House or any variation thereof which used the words Union and Tap together. Therefore, Defendant continued to proceed with its plans to open a restaurant under the name The Union Tap. *See* Transcript at pp. 40:20-42:20, 48:16-49:17.

10. Notwithstanding the foregoing, there are numerous other restaurants in Philadelphia that use the word Union and/or use the word Tap in their name. *See e.g.* photographs of other restaurants in Philadelphia using the word Union in their name, including

Union Taco, an establishment located in Manayunk. The photographs were introduced as Exhibit D-2 at the preliminary injunction hearing, and are attached hereto as Exhibit B.

11. On August 14, 2015, Defendant opened the restaurant known as The Union Tap at the location of 2711 Comly Road, Philadelphia, PA 19154 in Northeast Philadelphia. *See* Transcript at pp. 39:22-40:1.

12. The Union Tap House which Defendant operates has civil war paraphernalia inside. *See* photographs introduced as Exhibit D-1 at the preliminary injunction hearing, true and correct copies of which are attached hereto as Exhibit C; Transcript at pp. 45:12-48-7.

13. Plaintiff/Petitioner Lucky 13 Unlimited, LLC ("Plaintiff") operates a restaurant called Union Tap House at the corner of Fountain and Umbria streets, which is in the Manayunk section of Philadelphia. Transcript at p. 5:17-18.

14. Plaintiff's restaurant began operating at the end of April 2015 or beginning of May 2015. *See* Transcript at p. 8.

15. Plaintiff's restaurant is located 16.6 miles away from Defendant's restaurant. *See* Transcript at pp. 20:9-22.

16. The drive time from Plaintiff's restaurant to Defendant's restaurant is over 30 minutes in rush hour traffic. *See* map which was introduced as Exhibit D-3 at the preliminary injunction hearing, a true and correct copy of which is attached hereto as Exhibit D.

17. The name, logos, and signage for the two restaurants are different as set forth in Plaintiff's Complaint and in Exhibit D-3 introduced at the hearing. *See* Exhibit D hereto.

18. To Defendant's knowledge, Defendant has never been contacted or frequented by anyone who is looking for Plaintiff's restaurant, and aside from Plaintiff, no one has ever

complained or suggested to Defendant that he or she is confused as to whether Defendant's restaurant is affiliated with Plaintiff's restaurant. *See* Transcript at p. 54:5-21.

19. Plaintiff and Defendant do not share the same customer base. *See* Transcript at pp. 42:25-44:7.

20. Defendant was not even aware of Plaintiff's restaurant until after Defendant decided to open the restaurant The Union Tap. *See* Transcript at pp. 41:19-42:20.

21. The names of Plaintiff's restaurant and Defendant's restaurant are different as Defendant uses the word "The" in its name and Plaintiff does not, and Plaintiff uses the word House in its name and Defendant does not. *See* Transcript at pp. 49:24-50:23.

22. Plaintiff has not yet obtained a registered trademark for its business. See trademark application introduced at the hearing as Exhibit P-5, a true and correct copy of which is attached hereto as Exhibit E.

23. Plaintiff has not presented any evidence of consumer or customer confusion regarding the two restaurants The Union Tap and Union Tap House.

24. Plaintiff has not presented any evidence that it would suffer any damage or other irreparable harm absent the imposition of a preliminary injunction.

25. Plaintiff has not presented any evidence that a balancing of the equities favors the issuance of a preliminary injunction.

26. Plaintiff has not presented any evidence that the issuance of a preliminary injunction would be in the public interest.

## CONCLUSIONS OF LAW

### Preliminary Injunction Standard

27. Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014).

28. The power to issue an injunction should be used sparingly and relief should not be granted except in rare instances in which the law, the facts and the entities are clearly in favor of the moving parties. *Sovereign Order of Said John of Jerusalem-Knights of Malta v. Messineo,* 572 F. Supp. 983, 988 (E.D. Pa. 1983) (citing *Wright and Miller,* Federal Practice and Procedure §2948 at 428-29 (1973)).

29. A primary purpose of a preliminary injunction is maintenance of the status quo until a decision on the merits of a case is rendered. *EUSA Pharma (US), Inc. v. Innocoll Pharmaceuticals Ltd.*, 594 F. Supp. 2d 570, 578 (E.D. Pa. 2009).

30. In order to obtain a preliminary injunction, the moving party must establish: (1) a likelihood of success on the merits; (2) irreparable harm if the preliminary injunction is not granted; (3) that the balance of equities favors the moving party; and (4) that the injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008); *see also, EUSA Pharma (US), Inc.,* 594 F. Supp. 2d at 578.

31. A party seeking a preliminary injunction in a Lanham Act case is not entitled to a presumption of irreparable harm but rather is required to demonstrate that she is likely to suffer irreparable harm if an injunction is not granted. *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).

32. The failure to prove any one factor necessary to obtain a preliminary injunction is fatal to a moving party's motion for preliminary injunctive relief. *Id.*

33. Here, Plaintiff cannot meet the heavy burden required to justify the entry of a preliminary injunction and thus this Court must deny Plaintiff's requested relief in its entirety.

## Likelihood of Success on the Merits

34. Plaintiff has filed a Complaint along with its Petition for Preliminary Injunction. Its Complaint has three Counts: 1) violation of Section 43 of the Lanham Act (15 U.S.C. § 1125(a)), 2) Unfair Competition, and 3) violation of Pennsylvania statutory law regarding trademark dilution (54 Pa. C.S.A. § 1124(a)).

35. Plaintiff is not likely to succeed on the merits of any of the three claims and therefore a preliminary injunction is improper.

### *Unfair Competition*

36. The common law cause of action for unfair competition in Pennsylvania mirrors the Lanham Act's section 43(a) cause of action for unfair competition, except that under state law there is no requirement that the goods traveled through interstate commerce. *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F. Supp. 2d 567, 582 (E.D. Pa. 2002), amended (June 28, 2002) (citing *Haymond v. Lundy*, No. Civ.A. 99–5048, 2001 WL 15956, at *2 (E.D.Pa. Jan.5, 2001); *Gideons Int'l Inc. v. Gideon 300 Ministries, Inc.*, 94 F.Supp.2d 566, 580 (E.D.Pa.1999)).

37. Thus the standard for determining whether Plaintiff is likely to succeed under Count I of its Complaint for violation of Section 43(a) of the Lanham Act and Count II of its Complaint for common law unfair competition is virtually identical. *See id.*

38. Defendant thus addresses Plaintiff's likelihood of success on the merits as to Count I and Count II of its Complaint under the standards developed by the federal courts.

39. Section 43(a)(1) of the Lanham Act states in relevant part that:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

40. Under section 43(a)(1)(A) of the Lanham Act, a claim of unfair competition is established when the plaintiff proves that: (1) its mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services. *See Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d. Cir. 2000).

41. In determining whether a mark is protectable, the Third Circuit has ruled that trademark terms may fall within one of the following categories: arbitrary (or fanciful) terms, which bear "no logical or suggestive relation to the actual characteristics of the goods;" suggestive terms, which suggest rather than describe the characteristics of the goods; descriptive terms, which describe a characteristic or ingredient of the article to which it refers, and generic terms, which function as the common descriptive name of a product class. *See Lamberti v.*

*Positano Ristorante, Inc.*, 2005 WL 627975, at *2 (E.D. Pa. Mar. 16, 2005) (citing *Express Services, Inc. v. Careers Express Staffing Services,* 176 F.3d 183, 185–86 (3d Cir. 1999).

42. Marks that are suggestive, arbitrary, or fanciful are inherently distinctive and are automatically protected. *Id.* (citing *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 478 (3d Cir. 1994)).

43. Generic terms are never protected "because to tolerate their monopolization would preclude competitors from accurately and efficiently describing their products and hence unduly hobble them in competition." *Id.* (citing *Duraco Prods. v. Joy Plastic Enters.,* 40 F.3d 1431, 1440 (3d Cir. 1994)).

44. Descriptive terms may be protected, but only in limited circumstances. *Id.* (citing *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,* 104 F.Supp.2d 427, 458 (D.N.J. 2000) aff'd, 269 F.3d 270 (3d Cir. 2001)).

45. Plaintiff's mark is descriptive in that it describes the goods and products at the restaurant as it is a tap house and Plaintiff uses the word Tap House in its name and Union is a name that is widely used by restaurants in the Philadelphia area. Moreover, Union describes Defendant's restaurant as there is civil war and Union army paraphernalia located throughout the restaurant.

46. Descriptive terms are protected only if they achieve secondary meaning in the minds of the consuming public. *Id.* (citing *Checkpoint,* 104 F.Supp.2d at 458).

47. Secondary meaning is acquired when the mark is "not only an identification of the product or services, but also a representation of the origin of those products or services." *Id.* (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 438 (3d Cir. 2000).

48. The burden to establish secondary meaning is substantial. In determining whether a disputed mark has achieved secondary meaning, the Third Circuit considers: (1) the extent of sales and advertising leading to consumer association; (2) the length of the mark's use; (3) the exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and (11) actual confusion. *See id.* at 438 (citing *Ford Motor,* 930 F.2d at 292).

49. Here, Plaintiff has not set forth any evidence of sales and advertising leading to consumer association, the exclusivity of use, the fact of copying, customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, the number of sales, the number of customers and/or actual confusion. Absent evidence of these factors, it is clear that Plaintiff has not met the substantial burden to prove that its mark has achieved secondary meaning such that it would be valid and protectable.

50. If the Court however finds that the mark is not descriptive, but rather is a generic or suggestive, then the court must consider the third prong of the test for determining the viability of a trademark infringement claim—likelihood of confusion.

51. A likelihood of confusion exists "when the consumers viewing the defendant's mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Strike Holdings LLC v. UC Strikes, LLC*, 2005 WL 1799412 *4 (E.D. Pa. July 28, 2005).

52. In determining whether likelihood of confusion exists, the Third Circuit requires district courts to consider the following factors, which are referred to as the *Lapp* factors:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; [and]

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*All. Bank v. New Century Bank*, 742 F. Supp. 2d 532, 555 (E.D. Pa. 2010).

53. Based upon a balancing of these factors, Plaintiff has not established that a likelihood of confusion exists by Defendant's use of the name The Union Tap for its restaurant.

54. Specifically, Plaintiff has not shown evidence of actual confusion through the testimony of consumers or that the consuming public might expect the Plaintiff to manufacture or endorse both Plaintiff's restaurant and Defendant's restaurant.

55. Furthermore, no confusion could exist because the marks are different, as are the names, logos, and signage for the two restaurants. *See* Transcript at pp. 49:24-50:23; *see also* Exhibit D.

56. Additionally, Plaintiff's mark is not strong and could not be strong, particularly in Northeast Philadelphia, as Plaintiff's restaurant just began operations in April or May 2015, and Defendant's customer base does not include the same customers as those that frequent Plaintiff's restaurant in Northeast Philadelphia. *See* Transcript at pp. 8, 42:25-44:7.

57. Given these facts, Plaintiff cannot show that a likelihood of confusion exists, and therefore Plaintiff has not established that it is likely to succeed on the merits of its Lanham Act/Unfair Competition claim(s) against Defendant.

58. Therefore, Plaintiff's request for a preliminary injunction must be denied.

*False Advertising*

59. To establish a claim based on a false or misleading representation of a product under Section 43(a)(1)(B) of the Lanham Act, the plaintiff must show:

> 1) that the defendant has made false or misleading statements as to his own product [or another's];
> 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;
> 3) that the deception is material in that it is likely to influence purchasing decisions;
> 4) that the advertised goods traveled in interstate commerce; and
> 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000), *see* 11 U.S.C. § 1125(a)(1)(B).

60. All of the above elements must be met in order to succeed on a claim for false advertising under the Lanham Act.

61. Plaintiff has not established that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc., and therefore it has not satisfied an element necessary to show that it is likely to succeed on the merits of its false advertising claim.

62. Indeed, Plaintiff has not presented any evidence of damage from Defendant's use of the name The Union Tap for its restaurant.

63. As such, Plaintiff has not met its burden to show that it is likely to succeed on the merits of its false advertising claim and Plaintiff's request for preliminary injunction must be denied to the extent that its Lanham Act claim is brought pursuant to 11 U.S.C. § 1125(a)(1)(B).

*Trademark Dilution*

64. In its Complaint, Plaintiff has also brought a claim for trademark dilution under the Pennsylvania Trademark Dilution Act, 54 Pa.C.S.A. § 1124.

65. Under Pennsylvania statutory law regarding trademark dilution: "The owner of a mark which is famous in this Commonwealth shall be entitled ... to an injunction against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F. Supp. 2d 567, 582 (E.D. Pa. 2002), amended (June 28, 2002) (citing 54 Pa.C.S.A. § 1124).

66. The standard for establishing trademark dilution under Pennsylvania law is the same as it is under federal law. *Id.*

67. A claim for trademark dilution differs from 15 U.S.C. § 1125(a), section 43(a) of the Lanham Act, the federal trademark infringement law, by eliminating the need to show confusion; that is, the need to show that the defendant's mark causes consumers to confuse the defendant's goods with the plaintiff's. *See Hershey Foods Corp. v. Mars, Inc.*, 998 F. Supp. 500,

502-03 (M.D. Pa. 1998) (citing *Versa Products Co. v. Bifold Company (Manufacturing) Ltd.,* 50 F.3d 189, 199–200 (3d Cir.1995) (a significant aspect of a section 1125(a) claim is the need to show confusion)).

68. Instead, a dilution claim asserts that, while the defendant's mark does not confuse consumers as to the source of the goods, it leads consumers to believe that the plaintiff's mark now identifies two different sources of goods, thus diluting the mark's ability to identify the plaintiff's goods alone. *Id.*

69. Pennsylvania's trademark dilution statute provides:

The owner of a mark which is famous in this Commonwealth shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark and to obtain such other relief as is provided in this section. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to:

(1) The degree of inherent or acquired distinctiveness of the mark in this Commonwealth.

(2) The duration and extent of use of the mark in connection with the goods and services with which the mark is used.

(3) The duration and extent of advertising and publicity of the mark in this Commonwealth.

(4) The geographical extent of the trading area in which the mark is used.

(5) The channels of trade for the goods or services with which the mark is used.

(6) The degree of recognition of the mark in the trading areas and channels of trade in this Commonwealth used by the mark's owner and the person against whom the injunction is sought.

(7) The nature and extent of use of the same or similar marks by third parties.

(8) Whether the mark is the subject of a registration in this Commonwealth or a Federal registration under the act of March 3, 1881 (21 Stat. 502) or the act of February 20, 1905 (33 Stat. 724), repealed by the Trademark Act of 1946 (60 Stat. 427, 15 U.S.C. § 1051 et seq.), or on the principal register.

54 Pa.C.S.A. § 1124.

70. Here, the factors do not support a trademark dilution claim as Plaintiff's mark is not inherently distinct nor has it acquired distinctiveness as the words Union and Tap are used in numerous restaurants throughout the Commonwealth and Plaintiff's and Defendant's marks and names are not the same.

71. The duration and extent of use of the mark does not support Plaintiff's dilution claim because Plaintiff had only used its mark for a few months prior to Defendant's opening of its restaurant.

72. The duration and extent of advertising and publicity does not support Plaintiff's dilution claim because Plaintiff has not substantially advertised in the Commonwealth and Plaintiff has not operated and does not operate in the same trade area as Defendant as its only restaurant is located in Manayunk.

73. Furthermore, Plaintiff has not presented evidence of the channels of trade for the goods or services with which the mark is used or the degree of recognition of the mark in the trading areas and channels of trade in this Commonwealth used by the mark's owner and the person against whom the injunction is sought.

74. Lastly, Plaintiff's mark has not been registered.

75. All of the factors therefore favor finding that Plaintiff's mark has not been diluted by Defendant's use of the name The Union Tap and therefore Plaintiff has not established a

likelihood of success on the merits of its trademark dilution claim and its request for a preliminary injunction must be denied.

### Irreparable Harm

76. Plaintiff has not established that it will suffer irreparable harm if an order for a preliminary injunction is not entered.

77. Indeed, Plaintiff admitted at the preliminary injunction hearing that it had not presented evidence that it would suffer irreparable harm if an injunction was not granted. *See* Transcript at p. 37:8-16.

78. Moreover, Plaintiff has failed to establish that it cannot be compensated for any money damages that it would incur as a result of any alleged lost sales as a result of customer confusion.

79. Plaintiff has not and cannot prove that it will suffer any loss of sales or customer confusion as a result of Defendant's use of the name The Union Tap for its restaurant as the two restaurants do not share the same customers given that they are in different trade areas.

80. Plaintiff has thus failed to establish an element necessary for the imposition of a preliminary injunction, and thus its request for a preliminary injunction must be denied.

### Balancing of the Equities

81. Plaintiff has not established that a balancing of the equities favor the entry of a preliminary injunction.

82. Preventing Defendant from operating the new restaurant under the name The Union Tap will result in substantial economic losses to Defendant, as it has, in the pursuit of its legitimate business, invested and expended significant sums of money to operate The Union Tap under that name.

83. Furthermore, any preliminary injunction imposed on Defendant will restrict its ability to engage in free enterprise by effectively forcing The Union Tap to cease operations under its name for a period of time, even though Plaintiff's restaurant and Defendant's restaurant are in entirely different trade areas and the names of the restaurants are different.

84. If Defendant is not able to operate under its name for a period of time, while this litigation is pending, it will suffer significant financial loss, as the name change will confuse customers, and Defendant may have to temporarily cease operations to comply with the injunction order.

85. Plaintiff on the other hand will not be harmed if the preliminary injunction is denied as Plaintiff has not established that it has suffered or will suffer economic loss or loss of goodwill from Defendant operation of its business in an entirely different trade area from Plaintiff.

86. As Plaintiff has not provided sufficient evidence to support its claim that the balance of equities favors granting the preliminary injunction, Plaintiff's petition for preliminary injunction must be denied.

### **Public Interest**

87. Plaintiff has not established that the public interest favors the entry of a preliminary injunction.

88. As set forth above, the injunction may require Defendant to temporarily cease operations.

89. Therefore, any preliminary injunction could effectively prevent Defendant from operating under its current name, which would not only prevent Defendant from earning a living but would also prohibit consumers from enjoying goods and services which they seek to enjoy.

90. Furthermore, a name change would itself confuse customers.

91. A preliminary injunction would also harm the area where Defendant is operating its business, as businesses will be forced to operate near a restaurant while the restaurant is either closed or operating under an unknown name during the course of the litigation.

92. Therefore, Plaintiff, has through this lawsuit, sought to halt the operation of a legitimate business owned by Defendant, which is operating under a name that is different from the name of Plaintiff's restaurant.

93. Requiring Defendant to change the name of its restaurant would thus not be in the public interest.

94. As such, Plaintiff's Petition for Preliminary Injunction must be denied.

## Closing Argument

The burden on a plaintiff to show the right to a preliminary injunction is high and a preliminary injunction should only be granted in extraordinary circumstances. Here, Plaintiff is seeking to preliminarily enjoin Defendant's operation of a restaurant that opened mere months after Plaintiff opened its restaurant. The names of Plaintiff's and Defendant's restaurants are different, the trade area and customer base for the two restaurants are different, and the logos and signs used for the two restaurants are different. Plaintiff is thus not likely to succeed on the merits of its claims against Defendant. More importantly, however, Plaintiff has not established that it would suffer irreparable harm if a preliminary injunction order is not entered. Indeed, Plaintiff has presented no evidence of any damage that Plaintiff has suffered or will suffer if a preliminary injunction order is not entered, which fact was admitted by Plaintiff at the preliminary injunction hearing. This is because Plaintiff cannot prove any such harm. Absent a

showing of irreparable harm, the imposition of a preliminary injunction is improper and Plaintiff's petition must be denied under the applicable law.

                              Submitted by:

                              WEIR & PARTNERS LLP

                              By: <u>/s/ Brett A. Datto, Esquire</u>
                                    Brett A. Datto, Esquire
                                    PA Attorney ID No. 59493
                                    Patrick T. Krenicky, Esquire
                                    PA Attorney ID No. 309703
                                    The Widener Building, Suite 500
                                    1339 Chestnut Street
                                    Philadelphia, PA 19107
                                    (215) 665-8181
                                    brett.datto@weirpartners.com
                                    pkrenicky@weirpartners.com

Date:   December 1, 2015                *Attorneys for Defendant*