IN THE EASTERN DISTRICT COURT
FOR THE FEDERAL DISTRICT OF PENNSYLVANIA

**LUCKY 13 UNLIMITED, LLC**
**D/B/A THE UNION TAP HOUSE**

vs.

**COMLY ROAD HOLDINGS, LLC**       No. 2:15-cv-05946-RK
**D/B/A UNION TAP**
**D/B/A UNION TAP PHILLY**          PROPOSED FINDINGS OF FACT AND
**D/B/A UNIONTAPPHILLY.COM**        CONCLUSIONS OF LAW

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**Findings of Fact**

1. Plaintiff/Petitioner, Lucky 13 Unlimited, LLC, is the owner of The Union Taphouse in Manayunk, Philadelphia, Philadelphia County.

2. The name "The Union Taphouse" was registered with the Pennsylvania Department of State on February 13, 2015.  (Transcript at 7:16, Petitioner's Exhibit 1)

3. The name was chosen partially in tribute to Union Jack's, the former name of the bar, and partially because research by Henry Newman, the bar's manager, and Stephanie Pappas, the owner of Lucky 13 Unlimited, LLC, indicated that there was no other bar by that name in Pennsylvania.  (Transcript, 5:21-25; 6:1)

4. There was, in fact no other business in Pennsylvania registered with a combination of the words "Union" and "Tap." (Transcript, 17:13)

5. Plaintiff/Petitioner opened The Union Tap House on April 10, 2015, and the sign indicating that the former Union Jack's bar had changed its name to The Union Tap House went up a few weeks later, at the end of April or beginning of May, 2015. (Transcript, 8:5-6)

6. The bar has operated under that name since the last week of April or beginning of May. (Id.)

7. On August 14, 2015, also in Philadelphia, Pennsylvania, Defendant, Comly Road Holdings, LLC, opened a bar called the Union Tap. (Transcript, 39:24)

8. The Union Tap is located in Northeast Philadelphia, approximately 16 miles away from The Union Taphouse, which is in Manayunk. (Transcript, 20:11)

9. The media markets are identical; the bars are located in the same City and County.

10. Plaintiff has indicated advertising in local area print media and on the radio; so has Defendant. (Plaintiff, Transcript at 23; Defendant, Transcript at 53-54)

11. By August 29, 2015, there was sufficient confusion between the two bars that Bella Vista Beer Distributors accidentally delivered part of The Union Taphouse's order to the Union Tap.  (Transcript, 12:6-18, Petitioner's Exhibit 3)

12. There have been several occasions where orders have been made to the Union Taphouse and not picked up, leading to a conclusion that the food was ordered from the wrong bar/restaurant. (Transcript, 27:23-24.)

13. A Yelp review on the Internet was admitted into evidence indicating a review for the Union Taphouse on Union Tap's review page. (Transcript, generally, p. 29-30)

14. Plaintiff also testified to refusing a large delivery of beer from Penn Distributors, which was meant for Defendant. (Transcript, 27:22-25; 28:1-2)

15. The Plaintiff hired counsel and sent a cease and desist letter to Defendant on approximately September 16, 2015. (Transcript, 15:21; 61:10-11; Petitioner's Exhibit 4)

16. The Plaintiff filed for a Federal Trademark, not yet approved, on September 17, 2015. (Transcript, 16:11-12, Petitioner's Exhibit 3)

17. During the course of their trademark search, they found only one other trademark which combined in any way the words "Union" and "Tap," as part of a longer restaurant name, in California. (Transcript, 16:22-25, 17:1-7)

18. There is no evidence that the trademark has been contested by Defendant or any other party or non-party to this action.

19. .The restaurants have substantially similar menus.

20. They both specialize in craft beers.

21. They appear to both market towards customers interested in craft beer and inexpensive American food.

22. Defendant is an experienced restauranteur who, by his own admission, has been "in the restaurant business since [he] was 18." (Transcript, 40:6).

23. Defendant has owned multiple prior establishments including "General Grant American Bar & Grill" and "2J Saloon" from 1999 until 2015. (Transcript, 56:1; 56:23).

24. Defendant hired an attorney for the incorporation of his prior business "General Grant American Bar & Grill." (Transcript, 57:16-17).

25. Defendant did not use an attorney for the incorporation of his present business, Comly Road Holdings, LLC and instead used his landlord Steve Alesko. (Transcript, 58:11-15)

26. Defendant never filed a fictitious name for any of his prior businesses. (Transcript, 60:18)

27. Defendant never filed a fictitious name for his present business "The Union Tap." (Transcript, 59:13).

28. Defendant relied upon popular Internet search engines such as Google, Yelp, Yahoo, and Yellow Pages to conduct a tertiary search for the phrase "Union Tap." (Transcript,  60:8-10.)

29. Defendant neglected to check with the Pennsylvania Department of State Bureau of Corporations before naming his business "Union Tap." (Transcript at 60:15).

30. Defendant neglected to perform a federal trademark search and did not file for a federal trademark for the name "Union Tap." (Transcript, 61:7).

31. Defendant received a cease and desist letter from Plaintiff's attorney Evan S. Shingles on September 16, 2015. (Transcript, 61:10)

32. Defendant neglected to contact Plaintiff or Plaintiff's attorney after receiving the cease and desist letter. (Transcript, 61:13; 61:16).

33. Defendant acknowledged receipt of Plaintiff's "Petition for Preliminary Injunction" and "Civil Action Complaint" but neglected to contact Plaintiff or Plaintiff's attorney. (Transcript, 63:16)

34. Defendant, aware of the instant matter, continued to advertise the disputed mark after receipt of Plaintiff's cease and desist and letter. (Transcript, 65:6)

35. Defendant, aware of the instant matter, continued to advertise the disputed mark after receipt of the complaint and preliminary injunction. (Transcript at 65:16).

36. A full month after Defendant received Plaintiff's cease and desist letter Defendant increased advertising the disputed mark, including advertising at an Eagles Pep Rally with Bill Bergey on October 14, 2015. (Transcript at 66:8)

**Conclusions of law**

1. "The test for preliminary relief is a familiar one. A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir.1999)."

2. To establish a likelihood of success on trademark infringement claim, a plaintiff must prove that: (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods and services is likely to create confusion concerning the origin of the goods or services. Opticians Ass'n of Am. v. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990).

3. Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Henry Friendly of the 2nd Circuit Court of Appeals, they may be (1) generic; (2) descriptive (3) suggestive; (4) arbitrary; or (5) fanciful. Two Pesos, Inc. v. Taco Cabana, Inc., 505 US 763, 768 (1992) *citing* Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F. 2d 4, 9 (2d Cir 1976).

4. The fact that Plaintiff's combination of the words "union" and "tap" is unique in Pennsylvania's Department of State database, and close-to-unique in the Federal Trademark Registry, places the mark firmly in the "arbitrary" category.

5. An arbitrary mark is a"known word used in an unexpected or uncommon way" Nautilus Grp., Inc. v. Icon Health & Fitness, Inc., 372 F.3d 1330, 1340 (Fed. Cir., 2004).

6. Arbitrary marks are considered strong and legally protectable. <u>Palm Bay Imports v. Veuve Clicquot Ponsardin</u>, 396 F. 3d 1369, 1372 (Fed. Cir. 2005).

7. As such, the mark is valid and legally protectable.

8. While Plaintiff's trademark application is still pending with the U.S.P.T.O., there is no question that a party can establish rights in an unregistered mark. <u>Two Pesos</u>, 505 US at 768.

9. Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning unless the unregistered or contestable mark is inherently distinctive. <u>Ford Motor Co. v. Summit Motor Products, Inc.</u>, 930 F. 2d 277, 292 (3d Cir., 1994).

10. The fact that Plaintiff's combination of the words "union" and "tap" is unique in Pennsylvania's Department of State database, and close-to-unique in the Federal Trademark Registry, indicates that at least in this geographical area, the name is inherently distinctive and no secondary meaning is thus necessary.

11. Plaintiff has established a first use in commerce at least three months prior to Defendant.

12. "The party who first uses a mark in commerce is said to have priority over other users." <u>Hana Financial, Inc., v. Hana Bank</u>, ____ U.S. ____, 135 S.Ct. 907, 909 (2015); <u>Hanover Star Milling Co. v. Metcalf</u>, 240 US 403 (1916)

13. Plaintiff has established ownership of the mark by prior use.

14. The question of whether a likelihood of confusion has been established is covered by a ten point test set forth in <u>Interpace Corp. v. Lapp., Inc.</u>, 721 F.2d 460 (3d Cir. 1983).

15. The <u>Lapp</u> test indicates that the factors to be considered as to likelihood of confusion between marks are whether there is a degree of similarity between marks, the strength of the owner's mark, the price of the goods at question, the length of time that the Defendant used the mark without evidence of actual confusion arising, the intent of the Defendant in adopting the mark, the evidence of confusion, whether the parties use the same channels of trade and are advertised through the same media, whether the targets of sales efforts are the same, the relationship of goods in the minds of consumers, and other relevant facts. <u>A&H Sportswear v. Victoria's Secret Stores, Inc.</u>, 237 F.3d 198, 211 (3rd Cir. 2000).

16. The names "The Union Taphouse" and "Union Tap" are not only similar, but almost identical.

17. The mark, as stated above, is arbitrary, and thus strong.

18. Defendant used the name in trade for barely two weeks before actual confusion arose.

19. Defendant testified that he named his bar in honor of General Grant, but gave no reason as to why he could not continue under the name of the General Grant Inn, under which he had operated for some years previously.

20. Evidence of confusion includes beer deliveries, takeout orders to the wrong restaurant, and online reviews being posted for the wrong bar.

21. Parties are engaged in an almost identical line of work, and advertise through the same sorts of media (print, online, and radio).

22. The targeted customers (craft beer enthusiasts, fans of American food) are almost identical.

23. The Lapp test has clearly been met, and a likelihood of confusion is probable.

24. "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will," intangible harms for which "it is virtually impossible to ascertain the precise economic consequences." Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 726 (3rd Cr. 2004).

25. Where there is a finding of likelihood of confusion, "the inescapable conclusion is that there was also irreparable injury" " Opticians Ass'n of Am. v. Opticians of Am., 920 F.2d at 196-197.

26. While Defendant claims it would be harmed by an injunction forcing it to change its name, a party "can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issuance of an injunction upon itself." Opticians Ass'n of Am. v. Opticians of Am., 920 F.2d at 197.

27. "Public Interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." Id.

28. Denying injunctive relief in a case where there is confusion would not serve the public interest, because "both parties would be free to continue confusing customers" Id.

29. The grounds for a preliminary injunction have been met.

30. The injunction should issue, and the matter shall be held over for an assessment of damages hearing.

31. "He who seeks equity must do equity" *Black's Law Dictionary* (9th ed. 2009), *available at* Westlaw BLACKS.

32. When a party seeks remedy, their intent and behavior is relevant because those who "come to equity must do so with clean hands." "Clean Hands Doctrine" *Black's Law Dictionary* (9th ed. 2009), *available at* Westlaw BLACKS.

33. The defendant has unclean hands here because its principal has acted in bad faith. The factors relevant to the issue of a defendant's bad faith use of a trademark include: (1) whether the alleged infringer conducted an adequate trademark search; (2) whether the alleged infringer followed through with its investigation when it found there were companies using names similar to the one it wants to adopt; and (3) whether the alleged infringer relied on the advice of counsel. *See* Fisons Horticulture, Inc. v. Vlgoro Industry, 30 F.3d 466, 479-80 (3d Cir. 1994); *see also* Sands, Taylor & Wood v. Quaker Oats Co., 1990 U.S. Dist. LEXIS 17342 (N.D. Ill. 1990) *affirmed in part, reversed in part*, 978 F.2d 947 (7th Cir. 1992), *cert. denied*, 507 U.S. 1042 (1993). All of these factors are extant in the instant case.

34. The Third Circuit has instructed that in examining factors of bad faith, courts should ask: "Did [defendant] consider the likelihood of confusion with other companies' marks and products (as opposed to considering the likelihood that someone would context its new

mark)? Did it attempt to contact companies using a similar mark, such as [plaintiff]? Was [defendant] careless in its evaluation of the likelihood of confusion?" *Id Fisons.*

35. The defendant's principal did not perform his due diligence because he failed to conduct an adequate trademark search. By his own admission he only checked Google, Yahoo, etc. *See* Testimony at 60:8-10. He did not, however, check the most important and indeed only legitimate sources for this information, namely the Federal Trademark office and Pennsylvania Department of State. *See* Testimony at 60:15 and 61:7. He cannot therefore claim to have acted in good faith and his insufficient searches on various sundry Internet sites are irrelevant.

36. The defendant lack of due diligence was compounded by his failure to consult with counsel to guard against infringing on an existing (the plaintiff's) mark. The defendant testified that his landlord, who *was not an attorney,* performed the incorporation. *See* Testimony at 58:11-15. Additionally, he did not hire an attorney to file for a fictitious name or perform any type of trademark search. *See* Testimony at 60:18 and 61:7. This is especially egregious given the amount of time and experience the defendant has in the restaurant and bar business.

37. Taken together the defendant's principal's conduct, a perfunctory online search and failure to hire an attorney, signals a careless trademark search and constitutes an egregious dereliction of its obligation of due diligence that is "highly relevant" to a determination of defendant's bad faith intent to use a trademark. In *Kos Pharmaceuticals* the Third Circuit found that "the adequacy and care with which a defendant investigates and evaluates its proposed mark, and its knowledge of similar marks or allegations of potential confusion, are highly relevant." Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d at 721. Here, Comly Road has demonstrated that it has acted in bad faith by not exercising due diligence by adequately searching public records or by hiring an attorney to perform those duties.

38. Further, bad faith can be inferred from the defendant's behavior after receipt of the cease and desist letter dated September 16, 2015. Pursuant to the defendants own testimony he did not contact the plaintiff or plaintiffs counsel. *See* Transcript at 61:13 and 61:16. Additionally, the defendant did not cease advertising during that time thereby adding to the damages suffered by Plaintiff and increasing Defendant's potential liability. *See* Transcript at 65:16.

39. Failure to stop using a mark after receipt of a cease and desist letter is evidence of the existence of Defendant's bad faith: "once the similarity is brought to his attention a failure or refusal to alter the trade dress to avoid confusion is equivalent to an original and actual intent." Johnson & Johnson v. Quality Pure Mfg. Inc., 484 F. Supp. 975, 207 U.S.P.Q. (BNA) 1127 (D.N.J. 1979).

40. The defendant continued to act in bad faith by failing to contact the plaintiff or plaintiff's counsel after receipt of the complaint and injunction. *See* Transcript at 61:13 and 61:16. Here, not only did the defendant persist in advertising but also expanded it by hosting a "pep rally" at an Eagles game attended by Eagles former great Bill Bergey. *See* Transcript at 66:8.

41. As the defendant's principal acted in  bad faith, there is sufficient evidence already on the record for the Court to deem this matter exceptional and to permit plaintiff to Petition the Court for attorney's fees pursuant to <u>Fair Wind Sailing, Inc. v. Dempster</u>, 764 F. 3d 303 (3d Cir. 2014).

                                                            Respectfully submitted,

                                                            /s EVAN S. SHINGLES, ESQUIRE

                                                           /s LIONEL ARTOM-GINZBURG, ESQUIRE

December 13, 2015

IN THE EASTERN DISTRICT COURT
FOR THE FEDERAL DISTRICT OF PENNSYLVANIA

**LUCKY 13 UNLIMITED, LLC**
**D/B/A THE UNION TAP HOUSE**

               vs.

**COMLY ROAD HOLDINGS, LLC**    No. 2:15-cv-05946-RK
**D/B/A UNION TAP**
**D/B/A UNION TAP PHILLY**    CERTIFICATE OF SERVICE
**D/B/A UNIONTAPPHILLY.COM**
                         CERTIFICATE OF SERVICE

The undersigned counsel certify that on this date the foregoing Findings of Fact and Conclusions of Law were served upon the following counsel by the operation of the PACER system:

Brett A. Datto, Esquire

Patrick Krenicky, Esquire

                        Respectfully submitted,

                        /s EVAN S. SHINGLES, ESQUIRE

                        /s LIONEL ARTOM-GINZBURG

December 13, 2015